455 So.2d 1317 (1984)
Larry Donald HARRINGTON, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2454.
District Court of Appeal of Florida, Second District.
September 12, 1984.
Jerry Hill, Public Defender and Michael E. Raiden, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
RYDER, Chief Judge.
Larry Donald Harrington was charged by information with manslaughter in August of 1983. Subsequently, he entered a plea of nolo contendere. At that point, Harrington had the opportunity to elect to be sentenced under the new Florida Sentencing Guidelines. In re Rules of Criminal Procedure (Sentencing Guidelines), 439 So.2d 848 (Fla. 1983).
On November 19, 1983, the court sentenced Harrington, under the guidelines, to a term of fifteen years imprisonment with jail credit of 143 days. This sentence was a departure from the recommended range under the guidelines and, as required by the rule, the judge provided a statement explaining his reasons for departure. On appeal, Harrington argued that, in imposing his sentence, the trial court erred because *1318 he had never affirmatively requested to be sentenced under the guidelines, and that even if he had been properly sentenced under the guidelines, the aggravation of his sentence was an abuse of discretion. On appeal, Harrington was represented by the public defender who informed this court in his initial brief that after a review of the record, he was unable to find where any affirmative request to be sentenced under the guidelines had been made by either Harrington or his trial counsel. This court also had an answer brief which had been filed by the appellee which responded to the appellant's points on appeal. The state's brief did not provide a statement of the case and facts, and therefore obviously agreed with the public defender that Harrington had not opted to be sentenced under the guidelines. On this point, see Overfelt v. State, 434 So.2d 945, 949 (Fla. 4th DCA 1983). After an independent review of the record on appeal, which did not reveal any contrary findings of fact, this court reversed the sentence imposed upon the appellant's first ground, and issued our June 1, 1984 opinion.
On June 8, 1984, the state filed a motion for rehearing where, lo and behold, a copy of Harrington's election to be sentenced under the guidelines, which had been filed by the public defender on October 21, 1983, was attached to the motion. An affidavit by the Deputy Clerk of the Circuit Court of Collier County was also attached. The affidavit indicated that Harrington's election to be sentenced under the guidelines for both this case and another case had been filed in the record of the other case, which was not appealed. Thus, although Harrington opted for guidelines sentencing in both cases, the record on appeal failed to reflect his election for guidelines sentencing in this case. The public defender and the state attorney general's office now agree that this belated revelation renders moot Harrington's first point on appeal. "These are the times that try men's souls."[1]
On this motion for rehearing, we now address only the appellant's second issue  whether clear and convincing reasons existed for which the trial judge could aggravate Harrington's sentence.
The total number of points calculated on Harrington's sentencing guidelines scoresheet fell into a recommended range of three to seven years incarceration. The judge chose to depart from this recommended range and instead imposed a sentence of fifteen years. As required by Florida Rule of Criminal Procedure 3.701(d)(11), the judge provided a written statement stating his reasons for departing from the guidelines and aggravating Harrington's sentence, of which a major portion is set forth below.
The sworn statements of the eyewitnesses to the crime, as well as the statement of the Defendant himself, reflect that the Defendant and the decedent began a verbal argument in the late afternoon hours of 21 June 1983. At approximately 7:45 P.M., the decedent reported to the Immokalee Substation of the Collier County Sheriff's Department that the Defendant had punched her in the mouth causing injury, and the Collier County Sheriff's Department responded and separated the two individuals and made each go his/her own way.
It appears from the evidence that the decedent and Defendant were companions to one Johnny Lee Anderson and his girlfriend, only known at this point as Dessie. It also appears that after being separated by the Collier County Sheriff's Department, the Defendant took the car and went back after the decedent and stopped her at the Eastern Service Station in Immokalee. There, he continued the argument immediately with the decedent and began to punch her in the face with his fist and apparently smashing her head up against the truck, only stopping after Mr. Anderson attempted to physically prevent the Defendant from further injuring the decedent. This was to no avail. Even when several bystanders attempted to determine what was happening and to try to talk the Defendant *1319 into ceasing from this destruction, the Defendant pulled his machete and threatened to take care of anybody else who got in his way, and even told Mr. Anderson that if he did not stay out of the Defendant's "business", that "I'll fuck you up".
It is important to point out that the Defendant at no time ever showed any remorse for the actions he had taken, he consistently tried to hide the fact of what he had done, he consistently demonstrated a belligerent and criminal action toward anyone who interfered with his goal, to wit: the severe beating and death of the decedent, all of which actions occurred during a five-to-six hour period on the 21st day of June, 1983. (Emphasis supplied).
Even though the record does reflect that the Defendant did consume a minor amount of alcoholic beverages, it is also the Court's clear impression that over the period of hours that transpired during 21 June 1983, the Defendant reached a definite state of mind in which it was his intent to beat this woman into submission and near death, unfortunately, actually accomplishing what his actions demonstrated his intent to be.
The Coroner's report in this case does demonstrate that the decedent suffered as follows:
This 44-year old woman received at least ten (10) distinct blunt injuries to her head, at least one (1) of them severe enough to cause a cerebral concussion, unconsciousness and subdural hemorrhage... . The intracerebellar hemorrhage, as well as the petechial conjunctival hemorrhages of the eyes, in conjunction with non-specific degenerative brain damage are suggestive of temporary obstruction of neck veins.
Thus, it would appear that the Defendant brutally beat as well as strangled the decedent into the state of unconsciousness and coma, which eventually led to her demise.
The Court has taken the position that even though the Defendant pled to the Manslaughter charge in an agreement that the State would drop all of the other pending charges, it is important for the Court to still enforce those responsibilities and sanctions that the Court feels are to be imposed by society on this particular Defendant, necessitating a non-compliance with the Sentencing Guidelines. The Court's concern is that under the Sentencing Guidelines the Defendant would receive a sentence of five (5) to seven (7) years, and the Court has no objection to the Defendant actually serving a full seven-(7)-year sentence. However, even though no one would ever seriously worry in the public sector as to what rights or concerns the decedent might have, especially since she was a 44-year old migrant, black, fruit-crop picker, the Court feels compelled to maintain that vigilance expected and demanded of society at large, even though she is now deceased.
THEREFORE, it is the Court's desire and intent that based upon the amount of time involved in which the ongoing dispute occurred, the multiple injuries received by the decedent, the lack of remorse of the Defendant, and his actions toward all innocent bystanders, the Court can only conclude that a seven-(7)year "guideline" sentence, in which the Court has no control over the amount of reduction in sentence that the Defendant would receive based upon good time or gain time, it is the Court's intention to insure that the Defendant actually serve a period of time in the State Prison System that is commensurate with the actions he took, as well as serving a minimum full seven-(7)-year sentence without any benefit of gain time or parole.
We hold this statement provides clear and convincing reasons upon which to depart from the recommended guidelines range. The judgment and sentence of the trial court is, therefore, AFFIRMED.
SCHOONOVER and LEHAN, JJ., concur.
NOTES
[1] T. Paine, The American Crisis, at 1 (1776).